UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JOHN F. ROBBINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:10-CV-282 |
| | ) | (PHILLIPS/GUYTON) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 11 and 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 and 16]. Plaintiff John F. Robbins seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

The Plaintiff previously filed applications for disability benefits in November 2000 and January 2004; both of these applications were denied. On December 5, 2000, the Plaintiff filed the present application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began January 1, 2005. [Tr. 10]. After his application was denied initially and also denied upon reconsideration, the Plaintiff requested a

hearing.

On August 5, 2008, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 22-38]. On September 9, 2008, the ALJ found that the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

**I.     ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since December 12, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following severe impairments: seizure disorder, diabetes mellitus type II[,] hypertension, personality disorder, cognitive impairment, bipolar disorder; history of hypoxic brain injury at birth and hypokalemia (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of medium work as defined in 20 CFR 416.967(c). He can walk, sit or stand for six hours total each in an 8-hour workday with normal breaks; occasionally lift and carry 50 pounds; frequently lift and/or carry 25 pounds. He should do no work around heights or hazardous [conditions]. He suffers from mild to moderate pain and mild to moderate loss of concentration; can understand and remember detailed tasks with some but not substantial difficulty but cannot do so with complex tasks. He can concentrate and attend to the same task despite some difficulty; can interact with co-workers, supervisors

and the general public without significant limitations and can adapt to work-like settings and changes as needed.

5. The claimant is capable of performing past relevant work as a fast food worker, kitchen helper and a dishwasher. This work does not require the performance of work-related activities precluded by claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since December 12, 2005 (20 CFR 416.920(f)), the date the application was filed.

[Tr. 12-20].

## II.     DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

3

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d

270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   BACKGROUND AND MEDICAL EVIDENCE

On September 27, 2000, Plaintiff was hospitalized for treatment of seizures. He told the physicians that his sister paid for his medication, but he stopped taking his Dilantin because it made him drowsy. [Tr. 189].

Plaintiff was hospitalized in July 2001 after suffering a seizure at work, blacking out, and hitting his head on the floor sustaining a laceration. [Tr. 183]. Plaintiff reported that he suffered a head injury in 1999, and the treating physician opined that the head injury that occurred in 1999 was probably the etiology of his seizures. [Tr. 183]. The Plaintiff reported not having any seizures the previous year, but he stated that he had two or three seizures during the past year when medication was being adjusted from Dilantin to Depakote and when he was non-compliant. [Tr. 183].

On November 13, 2002, the reviewing ALJ denied Plaintiff's November 2000 disability applications after a hearing. [Tr. 50-57]. The ALJ found that Plaintiff's adaptive behavior during

the developmental period was not consistent with mental retardation. [Tr. 52]. In January 2004, Plaintiff filed another application for disability, and did not appeal the initial denial. [Tr. 10].

In late 2005, the Plaintiff had a seizure while working construction with his nephew after having "been off his medication for some time" due to lack of insurance [Tr. 212]. The Plaintiff was admitted to Blount Memorial Hospital for observation and treatment. [Tr. 212]. Plaintiff's nephew told the hospital physician, James L. Milhollin, M.D., that the Plaintiff had "mild mental retardation" and seizures since birth, after experiencing a hypoxic brain injury during birth. [Tr. 214]. The nephew also reported that Plaintiff had no alcohol use history [Tr. 215].

Upon his initial admission to the hospital, the Plaintiff was not able to respond appropriately to any questions. Later in the same hospital stay, the Plaintiff reported a diagnosis of mild mental retardation. [Tr. 218]. The Plaintiff was noted to be a "poor historian," due to continuing "disorientation and confusion." [Tr. 218]. The Plaintiff reported that he was diagnosed with seizure disorder in 1999 or 2000, but he did not recall having any seizures when he was younger. [Tr. 218]. The Plaintiff could not recall if he had taken special education classes in school. [Tr. 219]. The attending nurse practitioner listed a diagnosis of mental retardation, but she admitted it was "difficult to assess cognitive functioning." [Tr. 219].

A CT scan of the head performed on November 3, 2005, showed no acute findings; it did show parietal scalp injuries. [Tr. 208]. Another CT scan performed on December 10, 2005, showed no acute brain abnormality. [Tr. 231]. On December 10, 2005, an electroencephalogram was abnormal due to the presence of frontal intermittent rhythmic delta activity. [Tr. 235].

In January 2006, Plaintiff was hospitalized for reoccurrence of seizures after running out of medication. [Tr. 251]. The attending doctor, Richard Gaddis, D.O., suggested that the Plaintiff seek

7

assistance from his family, follow-up with the Good Samaritan Clinic, and obtain his medication. [Tr. 251]. Dr. Gaddis reported on discharge that the Plaintiff had improved "back to what appeared to be his baseline." [Tr. 251]. Dr. Gaddis diagnosed a "cognitive impairment," as one of the secondary diagnoses [Tr. 251], and he gave the Plaintiff a one-month supply of medication [Tr. 252].

On February 11, 2006, the Plaintiff was readmitted to Blount Memorial Hospital after his brother-in-law found him "with seizure activity" and called 911. [Tr. 280]. Ibrahim Shalaby, M.D., saw the Plaintiff and found that his "history of seizures [was] secondary to non[-]compliance with medication intake." [Tr. 281]. The Plaintiff was also seen by Paul Miller, M.D., a psychiatrist, who noted the history of bipolar disorder and mild mental retardation [Tr. 283], but on examination Dr. Miller found "no cognitive deficits," normal thought process and content and psychomotor activity, and fair insight and judgment [Tr. 284]. Dr. Miller diagnosed bipolar disorder with no signs of active disease and postictal (post-seizure) delirium. [Tr. 284].

On March 26, 2006, psychologist William Kenney, Ph.D., examined Plaintiff at the request of the state agency. The Plaintiff thought he had a regular diploma from high school. [Tr. 308]. The Plaintiff reported that he had been working 25 to 30 hours, presumably per week, at Long John Silvers. [Tr. 308]. He reported that he was residing at "Horizon House," a congregate house which he reported he was staying at due to depression.

The Plaintiff reported that his first seizure was in 1999 and his last seizure had been about three months before. [Tr. 309]. He stated he did not recall any mental health treatment as a child or adolescent, and he did not have any trouble with reading or writing. [Tr. 309-10]. He did recall getting "some special help in eleventh grade . . . ." [Tr. 310]. The Plaintiff also recalled being in a mental hospital in the early 1980s, possibly in Kentucky. [Tr. 309]. Plaintiff said he walked to work

8

because he did not have a car. [Tr. 310]. At the Horizon House, the Plaintiff reported he washed clothes, swept, vacuumed, did some dishes, and went to the grocery once or twice a week. [Tr. 310].

Wechsler Adult Intelligence Scale (3d ed.) ("WAIS") testing of the Plaintiff revealed a verbal IQ of 75, a performance IQ of 70, and a full scale IQ of 70. [Tr. 311]. On the Wide Range Achievement Test, the Plaintiff obtained a reading standard score of 88, but he scored "well below average in all of his intellectual and memory tasks." [Tr. 312]. Dr. Kenney observed, "When looking at his history, his overall functioning seems to be in the borderline range." [Tr. 312]. Dr. Kenney found: the Plaintiff's ability to understand and remember was moderately limited; his concentration and persistence were limited; his social interaction was not significantly limited at the time; and his adaption was not significantly limited. [Tr. 313].

In April 2006, psychologist George T. Davis, Ph.D., reviewed the record on behalf of the state agency, considered the allegations, and found that Plaintiff had an organic mental disorder with a low IQ, but without a history of lifelong mental retardation. [Tr. 319, 330]. Dr. Davis found: mild limitation in the activities of daily living; mild limitation in social functioning; and moderate limitation in concentration, persistence, or pace. [Tr. 328]. Dr. Davis opined that Plaintiff could understand and remember detailed tasks with some but not substantial difficulty, but he would be unable to do so with complex tasks. [Tr. 334]. Dr. Davis opined that the Plaintiff could: concentrate and attend to the same tasks, despite some difficulty; interact with co-workers, supervisors, and the general public without significant limitations; and adapt to work-like settings and changes as needed. [Tr. 334].

In April, May, July, and August 2006, Plaintiff went to the hospital for seizures after not taking medication. [Tr. 397, 418, 511]. In May 2006, he was instructed not to drive after having a

seizure while driving with his girlfriend [Tr. 407, 411]. The Plaintiff was brought to the emergency room at Blount Memorial Hospital on August 11, 2006, for another seizure attributed to non-compliance with medications. Komal Kirpekar, M.D., noted that the Plaintiff "has mental retardation," in his summary of the Plaintiff's medical history, though he noted he did not know who the Plaintiff's treating physician was and was unable to obtain an accurate history. [Tr. 436].

On August 15, 2006, Plaintiff was again seen at the emergency room at Blount Memorial Hospital. Dr. Milhollin, the attending physician, noted that the Plaintiff had no primary care physician but had been followed at the Good Samaritan Clinic. [Tr. 463]. Dr. Milhollin noted that the Plaintiff had a long history of non-compliance and that his girlfriend stated he had not been taking his medications. [Tr. 463]. Dr. Milhollin explained, "The patient is not able to manage his own affairs due to what is thought to be some mental retardation in combination with bipolar disorder." [Tr. 463]. Dr. Milhollin stated that "[a]ttempts were made to assist the patient in obtaining disability," but Dr. Milhollin opined that the Plaintiff was not eligible due to his work at Long John Silvers. [Tr. 463].

In September and October 2006, Plaintiff was seen at Peninsula Behavioral Health Clinic for treatment of bipolar disorder, and the mental health specialist evaluating the Plaintiff ruled out mild mental retardation. [Tr. 585, 590]. Subsequent diagnoses included only manic-depressive disorder. [See, e.g., Tr. 566]. In February 2007, he was noted to be doing 72 hours a week of restaurant work. [Tr. 567]. In March 2007, Plaintiff was doing well on his current medication, he reported working part-time, and he stated that he liked his job [Tr. 563].

In March 2007, treatment notes at a clinic reflect that Plaintiff's last seizure was one year before. [Tr. 553]. In April 2008, Plaintiff was out of medication, but he had not experienced seizure

activity for two years. [Tr. 600].

At the August 2008 hearing, Plaintiff testified that his last seizure was one week earlier, but it was the first one that year. [Tr. 25-26]. He testified that it is when he is off of medications that he had seizures, and when he was on medication he was "okay." [Tr. 26]. The Plaintiff testified that he missed medication only because he had no insurance and relied on free samples. [Tr. 32]. The Plaintiff stated that he could only recall one time in which he had confused medication, which involved his high blood pressure medication . [Tr. 32]. He testified that he did not notice any side effects from his medication. [Tr. 27]. Plaintiff testified that he could dress, bathe, cook, and do laundry, but did not cook or do laundry where he lived. [Tr. 29]. He testified that he would like to go back to work, but he had transportation problems because his seizures prevented him from driving. [Tr. 33-34].

V.     POSITIONS OF THE PARTIES

The Plaintiff presents a single allegation of error in his appeal. The Plaintiff maintains that the ALJ erred by finding that the Plaintiff does not meet the criteria contained in Listing 12.05C, of 20 C.F.R., Part 404, Subpart P, App. 1.

The Government responds that the ALJ's decision was supported by substantial evidence, the Plaintiff's condition does not satisfy the criteria contained in Listing 12.05C, and the ALJ's decision, finding that the Plaintiff was not disabled, should be affirmed.

## VI. ANALYSIS

Both the Plaintiff's substantive allegations and the prior administrative decisions rendered on this issue play a role in this case. The Court will address each in turn below.

### A. Listing 12.05: Mental Retardation

Plaintiff contends that he did and does suffer from mental retardation as it is defined by the Listing of Impairments found in 20 C.F.R. 404, Subpart P, Appendix 1, Part A, Listing 12.05C. Listing 12.05C provides in relevant part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Normally, a claimant can establish disability by demonstrating all of the medical findings listed for an impairment. 20 C.F.R. § 404.1525(c)(3). "If a claimant does not have one of the findings, however, [he or] she can present evidence of some medical equivalent to that finding." Bailey v. Comm. Soc. Sec., No. 09-6389 (6th Cir. Mar. 11, 2011) (citing §§ 404.1525 & 404.1526). To demonstrate such a medical equivalent, the claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S.

12

521, 531 (1990) (emphasis in original).

Thus, to be disabled under Listing 12.05C, the Plaintiff must establish that: (1) his valid verbal, performance, or full scale IQ score was between 60 and 70; (2) he had significantly subaverage general intellectual functioning with deficits in adaptive functioning, which manifested prior to age 22; and (3) he has a mental or physical impairment imposing an additional and significant work-related limitation.

*1.  The ALJ Found that the Plaintiff Did Not Meet the Criteria Contained in Listing 12.05C*

In discussing whether the Plaintiff met the criteria contained in Listing 12.05C, the ALJ stated the following:

> While the claimant's representative contends that Mr. Robbins meets Listing 12.05(C) for mental retardation, I see little evidence to support this. There is no evidence of functioning at an IQ of 70 or less beginning prior to age 22, and his adaptive functioning does not reflect the limitations expected for someone with such severe limitations. The claimant completed high school and only required special education classes in order to complete his graduation requirements during his last year of schooling. He has demonstrated the ability to work successfully in a competitive work environment despite his seizure impairment which is inconsistent with disability.
>
> . . . .
>
> [T]he "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

[Tr. 13-14].

The ALJ also gave great weight to the examining psychologist Dr. Kenney and the state agency reviewing psychologist Dr. Davis. [Tr. 18-19]. As stated above, Dr. Kenney administered

13

the Plaintiff's WAIS-III testing and found that the Plaintiff had borderline functioning and moderate limitations in his ability to understand and concentrate and persist. Dr. Davis found the Plaintiff to have a mild limitation in the activities of daily living, a mild limitation in social functioning, and a moderate limitation in his ability to concentrate and persist.

*2.     A Valid Verbal, Performance, or Full Scale IQ Score Between 60 and 70*

Pursuant to Listing 12.05C, a claimant must demonstrate a "valid verbal, performance, or full scale IQ of 60 through 70." The ALJ, in this case, found that the record contained "no evidence of functioning at an IQ of 70 or less beginning prior to age 22," and the ALJ concluded that the Plaintiff had not met this requirement of Listing 12.05C. In contrast to the ALJ's finding on this point, the Court of Appeals for the Sixth Circuit has stated that a "claimant need not. . . produce an IQ score from before the age of 22." Id. at n.2.

The Court finds that the Plaintiff's score of 70 on the WAIS-III, [Tr. 311], meets the IQ score element of finding disability pursuant to Listing 12.05C. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(D)(6)(c) ("[W]here verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05").

The Court of Appeals has further instructed, that "a claimant must produce evidence beyond his present IQ scores to show that he exhibited deficits during his developmental period." Turner v. Comm. of Soc. Sec., 381 Fed. App'x. 488, 492 (6th Cir. 2010). Thus, the Court turns to the other criteria required for a finding of disability pursuant to Listing 12.05C.

3. *Significantly Subaverage General Intellectual Functioning with Deficits in Adaptive Functioning, Manifested Prior to Age 22*

In regards to the requirement that a successful claimant under Listing 12.05(C) demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning," prior to age 22, the Plaintiff argues that the record "is actually inundated with notations of mental retardation prior to age 22." [Doc. 12 at 4]. In support of this statement, the Plaintiff cites three historical notations made when the Plaintiff was in his mid to late forties.

For example, Plaintiff cites the Court to a note by an emergency room physician in Plaintiff's medical history that "[h]e also has some mild mental retardation, per his family." [Tr. 214]. The two other notations cited by the Plaintiff state, in reviewing the Plaintiff's history, that he has been diagnosed with mental retardation [Tr. 218, 220], but both of these reports appear to be based upon the Plaintiff's nephew's prior statement to the hospital that the Plaintiff had "mild mental retardation." All of these notations appear to originate from the Plaintiff's nephew's bedside report to the emergency-room physician that the Plaintiff had mild mental retardation, rather than objective medical evidence. Moreover, none of these statements establish any subaverage function *before age 22*, nor do they cite examples of deficits in adaptive behavior *manifested before age 22*.

The Plaintiff, instead, cites the Court to his current adaptive functioning.[1] He notes that he has lived in Horizon House, a congregate housing option offering permanent supportive housing, which he says indicates his own inability to care for himself. The Plaintiff's own reports contradict this position, because, as he explained to Dr. Kenney, he was able to wash clothes, sweep, vacuum, do some dishes, and go to the grocery store once or twice a week, while residing at the Horizon

---

[1]Adaptive functioning refers to social skills, communication, and daily living skills. Turner, 381 Fed. App'x. at 492.

House. [Tr. 310]. He similarly reported to the ALJ that he was able to dress, bathe, cook, and wash clothes, though he noted that the facility at which he currently lived did not allow residents to cook or do laundry. [Tr. 29].

The Plaintiff also cites the Court to Dr. Milhollin's statements that the Plaintiff "is suspected to have mental retardation," "is thought to [have] some mental retardation in combination with bipolar disorder," and has "very poor insight," [Tr. 463]. None of these descriptions or the other portions of the record cited by the Plaintiff, however, demonstrate deficits in adaptive functioning or evidence a condition manifested before age 22.

The Court has considered the evidence presented by the Plaintiff, and the Court finds that the evidence does not support finding significantly subaverage general intellectual functioning with deficits in adaptive functioning, manifested prior to age 22. The evidence in the record supports the opposite conclusion. As the ALJ noted, the Plaintiff completed high school with little special education and his work history, though modest, does not support a finding that he is functions at a significantly subaverage level or has deficits in his adaptive functioning, *i.e.* his social skills, communication, and daily living skills. See Turner, 381 Fed. App'x. at 492 (citing the completion of high school, with some special education, and a modest work history in finding that the evidence did not demonstrate the 12.05C prefatory criterion).

Even if the evidence presented by the Plaintiff did demonstrate significantly subaverage functioning, with deficits in adaptive functioning, its does not evidence or demonstrate that this deficient functioning manifested itself before age 22. To the contrary, the Plaintiff's social and medical history indicate that his condition has worsened in recent years.

16

Thus, the Court finds that the ALJ's determination that the Plaintiff did not by substantial evidence.

4.  *A Mental or Physical Impairment Imposing an Additional and Significant Work-Related Limitation.*

As to the third requirement under Listing 12.05C, evidence must demonstrate that the Plaintiff has a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). By definition, an impairment is severe if it is one which "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(a)(5)(c).

The Plaintiff argues that this requirement has been satisfied because the ALJ found that the claimant has the following severe impairments: seizure disorder, diabetes mellitus type II, hypertension, personality disorder, bipolar disorder, history of hypoxic brain injury at birth, and hypokalemia. [Tr. 13]. The Commissioner argues that the Plaintiff's daily activities were not significantly limited and points out that the Plaintiff was able to work during the alleged period of disability, posting, for example, an income of $7,984.47. [Doc. 16 at 14-15].

Out of an abundance of caution, the Court finds the claimant satisfies the third and final requirement of Social Security Listing § 12.05(C), given the combination of impairments stated above. This finding, though contrary to the ALJ's decision, does not undermine the substantial support for the ALJ's determination under Listing 12.05C, given the Court's above finding that the Plaintiff has not demonstrated significantly subaverage general intellectual functioning with deficits in adaptive functioning.

5.  *Medical Evidence in the Record*

Finally, in addition to the evidence cited and analysis included above, the Court finds that the medical evidence in the record also supports a finding that the Plaintiff is not mentally retarded. As the ALJ noted in his decision, in February 2006, the Plaintiff saw Dr. Miller, a psychiatrist, after being readmitted due to a seizure and reporting a history of mild mental retardation since birth. [Tr. 16, 281]. Dr. Miller noted the history of bipolar disorder and mild mental retardation. [Tr. 281]. On examination, however, Dr. Miller found "no cognitive deficits," normal thought process, normal content and psychomotor activity, and fair insight and judgment. [Tr. 284]. Dr. Miller diagnosed only bipolar disorder with no signs of active disease and postictal delirium. [Tr. 284]. Psychiatric care providers at Peninsula diagnosed "rule out mild mental retardation. [Tr. 17, 585]. Further, the opinions of Dr. Kenney, examining psychologist, and Dr. Davis, the state agency reviewing psychologist, support the ALJ's determination.

6.  *The ALJ's Determination that the Plaintiff Was Not Mentally Retarded Pursuant to 12.05C is Supported by Substantial Evidence*

Based upon the foregoing, the Court finds that the ALJ's determination that the Plaintiff did not fulfill the elements of Listing 12.05C is supported by substantial evidence. The Court so finds based upon the Plaintiff's failure to demonstrate significantly subaverage general intellectual functioning with deficits in adaptive functioning, prior to age 22. The ALJ similarly found that the Plaintiff had not demonstrated significantly subaverage general intellectual functioning with deficits in adaptive functioning, but the ALJ also relied upon the Plaintiff's failure to produce a IQ score below 70 and failure to demonstrate a work-related limitation. The undersigned, however, has

concluded that these criteria were likely met.

Notwithstanding these differing bases for decision, the Court finds that the ALJ's ultimate determination that the Plaintiff was not mentally retarded, pursuant to Listing 12.05, is supported by substantial evidence. The Court finds any error committed by the ALJ in analyzing the application of Listing 12.05C is harmless. See Rabbers v. Comm. Soc. Sec., 582 F.3d 647 (6th Cir. 2009) (finding error committed in analysis of listed impairment harmless because the decision at step three would not have changed).

**B.     Res Judicata Effect of Prior Decisions**

Alternatively and in conjunction with the above, the Court finds that the Commissioner has previously considered the issue of mental retardation in evaluating the Plaintiff's prior application for disability benefits. This decision, dated November 13, 2002, found that Plaintiff did not show the requisite deficits in adaptive functioning during the developmental period. [Tr. 52]. The decision is final and not subject to judicial review. See 42 U.S.C. § 405(g) (directing that appeals must be filed within 60 days of the Commissioner's final decision after a hearing); see also 20 C.F.R. § 416.1481.

As the ALJ recognized [Tr. 10], he is bound to follow Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997), which applies the principles of *res judicata* to administrative findings such as listing 12.05C, see Messer v. Astrue, 2010 WL 4791956 at *5 (E.D. Ky. Nov. 18, 2010).

The Plaintiff presented the Court with no new or compelling evidence relating to the previous determination that the Plaintiff did not demonstrate the criteria found in Listing 12.05C, including

the onset of symptoms prior to age 22. Thus, the ALJ's finding that the Plaintiff did not meet the criteria of Listing 12.05C may, alternatively, be upheld based upon the previous administrative determination that the criteria contained in Listing 12.05C have not been met.

VII.    **CONCLUSION**

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing medium work. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[2] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[2]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).